## EX PARTE MORRISON RENSHAW.

### January 30, 1879.

1. In deciding on the propriety of discharging a prisoner on *habeas corpus*, there is no exercise of appellate jurisdiction ; but the prisoner may nevertheless be discharged where the court committing the prisoner exceeded its jurisdiction either as to matter, place, sum, or person.

.2. Where a witness pertinaciously refuses to answer a lawful question, to compel obedience the court may order his imprisonment until he does answer, and need not limit his imprisonment to a given number of days ; and this whether such contumacious refusal to answer be before the court or the grand jury.

APPLICATION for *habeas corpus*.
*Prisoner remanded.*
F. D. TURNER and C. C. SIMMONS, for petitioner.

BAKEWELL, J., delivered the opinion of the court.

The petitioner complains that he is illegally restrained of his liberty by the jailer of the city of St. Louis. The return of the jailer shows that he has the body of the petitioner under authority of a commitment issued by the St. Louis Criminal Court. This commitment shows that the prisoner appeared before the grand jury as a witness and refused to answer interrogatories ; that this fact was communicated by the grand jury, in writing, to the Criminal Court ; that the court determined that the witness was bound to answer ; that the prisoner persisted in his refusal and was thereupon brought into court, and still refused to

answer; whereupon the court adjudged the prisoner guilty of contempt, and ordered that he be committed to the city jail until he consents to answer.

The Statute of *Habeas Corpus* makes it the duty of the court to which an application is made under the act, to remand the prisoner if detained in custody for any contempt specially and plainly charged in the commitment by some court or officer having authority to commit for contempt so charged. It is said by the Supreme Court, in *Ex parte Toney*, 11 Mo. 662 : —

" In deciding on the propriety of discharging a prisoner on *habeas corpus*, this court exercises no appellate jurisdiction. In the exercise of this power it is confined within the same limits which would restrain a judge of the County Court in its exercise. It can give no other or greater relief than is afforded by these officers. If the idea of all appellate jurisdiction is discarded, it will be obvious that neither this court nor any other court or officer can investigate the illegality of a judgment of a court of competent jurisdiction by a writ of *habeas corpus*. If the court has jurisdiction of the subject-matter and the person, although its proceedings may be irregular or erroneous, yet they cannot be set aside in this proceeding. In all collateral proceedings the judgment will be held conclusive."

And the authorities altogether discountenance the idea that any tribunal can by a writ of *habeas corpus* practically reverse a judgment of a court of competent jurisdiction, and discharge a prisoner from its sentence. *Williams's Case*, 26 Pa. St. 17 ; *Re O'Connor*, 6 Wis. 590 ; *Re Callicott*, 8 Blatchf. 89 ; *Re Percy*, 2 Daly, 539 ; *Ex parte Hartman*, 44 Cal. 32 ; *Ex parte Parks*, 3 Otto, 20 ; *Ex parte Winston*, 9 Nev. 76 ; *Ex parte Sam*, 51 Ala. 34 ; *The People* v. *Hicks*, 15 Barb. 162 ; *Ex parte Watkins*, 3 Pet. 202.

It is, however, provided in our *Habeas Corpus* Act that where the prisoner is in custody by virtue of a process from any court, the prisoner may be discharged " where the

jurisdiction of such court has been exceeded either as to matter, place, sum, or person ; '' and under this provision it is held (*Ex parte Page*, 48 Mo. 291) that where a court passes an excessive sentence, not warranted by any provision of the law, the Supreme Court will interfere and release the prisoner under the *Habeas Corpus* Act if the fact appears from the return. Whether in such exceptional cases the appellate tribunal is exercising its powers as a court of review under a proceeding under the *Habeas Corpus* Act, it is not necessary to inquire. It is enough that under the rule adopted in this State, where the return shows a commitment plainly and specially charged, by an officer having authority to commit for contempt, the prisoner must nevertheless be discharged, at least by an appellate tribunal, where it appears from the return that the sentence is in excess of the extreme punishment prescribed by law for the offence charged.

From the language of the statute and the nature of the case, as is said by Roosevelt, J., in *The People* v. *Hicks, supra,* it is obvious that the Legislature, in allowing *habeas corpus,* did not intend that the officer issuing the writ should revise the decision of the committing magistrate and determine whether the party charged had or had not been guilty of the contempt alleged. The only question, therefore, that remains for our examination is whether the learned judge of the Criminal Court, whose power to commit for a contempt is incontestible, has in this case pronounced a sentence for which there is no warrant in law.

In commitment for contempt, where the imprisonment is intended merely as a punishment for the offence, it is usual for the commitment to specify some definite time, and it should do so whether or not there be a statute fixing the limit of imprisonment for contempt. But it has been long settled that where the design of the imprisonment is not merely or not mainly to punish the contempt, but to compel obedience to an order which the court has a right to

make, and for non-compliance with which the contumacious person may be imprisoned, then the commitment should be for so long only as the contumacy shall continue. *Goff's Case*, 3 Mau. & Sel. 203.

The commitment in the present case, therefore, was well enough unless it appears that by some statutory provision the power of the judges of courts of record in this State is restrained, and that, as to questions to which it is their duty to require an answer, the contempt committed in refusing to answer having been punished as prescribed by law, the judge has no further power in the premises, and the contumacious witness may thereafter persist in his refusal and set at defiance with impunity the lawful commandment of the court.

The Witness Act provides (Wag. Stats., sect. 18) that " a person summoned as a witness, and attending, who shall refuse to give evidence which may lawfully be required to be given by such person, on oath or affirmation, may be committed to prison by the court or other person authorized to take his deposition or testimony, there to remain without bail until he give such evidence."

The plainness of this language leaves no room for construction. We have no right to nullify a law, to usurp the power of the Legislature, and to effect the judicial repeal of an enactment, by a construction against the letter and spirit and obvious meaning of the law. It is quite impossible to hold, in the teeth of this statutory provision, that a court has no power to order the imprisonment of a contumacious witness until he answers. It has been held by the Supreme Court, in *Ex parte McKee*, 18 Mo. 602, that under this provision a mere notary-public may commit a witness to prison until he will testify; and there is nothing in the language of the act from which it can be gathered that a notary has any other or greater power to compel a witness to give evidence than is given to courts of record.

It is argued, indeed, that the provisions as to punishment for contempt under the statute, as to courts of record

(Wag. Stats. 423, sects. 35–37), are inconsistent with the law just cited; and that, being inconsistent with it and having been subsequently enacted, they are a repeal of this provision of the older act. There is nothing in this argument. The two provisions have appeared together in the same general revision of the laws of the State for more than thirty years. There is no necessary contradiction, and the two clauses must be construed together. The provisions in regard to criminal contempts enumerate several punishable acts, amongst which is the refusal, when sworn as a witness, to answer any legal interrogatory; and the punishment for contempt is limited to a fine and imprisonment for ten days and until the fine is paid. A contumacious witness cannot be imprisoned for more than forty days as a punishment for any single act of criminal contempt. But, where the act is continuous contempt, of pertinaciously refusing to answer a lawful question, the punishment may continue whilst the contempt lasts, and the court is not obliged to bring the witness out of jail at the expiration of every ten days for the purpose of eliciting a renewed expression of contumacy on the part of the prisoner and inflicting a new sentence. Sects. 35 and 36 of the act as to courts contemplate the punishment of single acts of contempt. Sect. 18 of the Witness Act is a provision to enforce obedience to a lawful and necessary order of the court. If no such authority was given to the courts, it would be in the power of any sufficiently ill-disposed person, at the cost of a personal inconvenience to himself, to obstruct the administration of justice, and to defeat the object for which the courts are established.

We are referred to sects. 10, 11, 12 of the chapter in regard to grand juries (Wag. Stats. 1082, 1083), in accordance with which the present commitment was made. These sections provide that if a witness appearing before a grand jury refuse to answer interrogatories, and persist in his refusal after the court has determined that he is bound to an-

swer, the witness shall be brought before the court, who shall proceed therein in the same manner as if the witness had been interrogated and had refused to answer in open court; and if he be committed for a contempt on account of his refusal, and shall persist until the grand jury is discharged or until the expiration of his imprisonment, he shall not be discharged until he enter into a recognizance with sufficient security for his appearance at the next term of the court and not to depart the court without leave. It is undoubtedly in the power of the Criminal Court to punish a contumacious witness by an imprisonment for ten days. or any less time; and if the court inflicts that punishment, this law provides that the witness refusing to answer shall not be discharged without giving bail for his reappearance. But it is nowhere said that he shall be discharged on giving bail when the grand jury adjourns; or that the court must proceed, in case of a witness who refuses to answer a grand. jury, under the provisions of the statute as to courts of record; and that the court, in that case, cannot proceed under the Witness Act. The law in regard to grand juries expressly provides that, when the recalcitrant witness is brought before the court, the court shall proceed in the. same manner as if the witness had been interrogated and. refused to answer in open court: If a witness refuse to an-. swer in open court, what are the proceedings? As we have seen, the court may, under the act concerning courts of. record, sentence the witness to jail for a period of days limited in that act, or it may, under the Witness Act, send the witness to jail until he answer. Which course shall be pursued is a matter entirely in the discretion of the court. If the court sentence the witness to jail for ten days or less, then the witness shall not be discharged when the grand jury adjourns or when his term expires; in any case, that, is, he shall not be discharged without giving bail for his reappearance before the next grand jury or at the next term. of the court. If the witness, on the other hand, is sen-

tenced to jail until he answers, there can be no occasion for admitting him to bail; and because the court, under the law, may sentence the witness to jail for a limited time (which is probably the usual practice), there is a provision that the witness shall in no event be discharged without bail for his reappearance.

But a case may present itself in which the court is satisfied that the ends of justice will be defeated unless the severer course is pursued. It may be that the witness has been discharged on bail, and has still refused to answer the questions at the next term of the court; and this may have gone on from term to term.

The power of the court is clear; and if it does not violate the law in the commitment, it is settled that neither the appellate court nor any other tribunal can interfere by virtue of the *Habeas Corpus* Act. Where there is a contempt specially and plainly charged in the commitment by any officer having authority to commit for the contempt, the prisoner brought before the court by *habeas corpus* must be remanded unless the sentence was one not warranted by any provision of law. As to the circumstances of the commitment, except so far as they appear from the return, the tribunal before which the prisoner is brought on *habeas corpus* can know nothing. There is nothing in the present record from which we can see whether or not this witness has been already bailed; and, for all that appears, it may be evident to the trial court that to sentence the witness to imprisonment and a fine, and then discharge him on bail, would be a mockery of justice. Of all this we can know nothing. On appeal we could not interfere with the discretion of the trial court unless it clearly appeared that there had been an abuse of that discretion. Much less can we look into a question of that nature in a proceeding by *habeas corpus*. It is in the power of the trial court, as it shall think may best subserve the ends of justice, to discharge this witness or to sentence him for a limited period to jail on a new refusal to answer,

and at the expiration of the term of this imprisonment to admit him to bail. But it is not in the power of this court to modify the law, or to prescribe to the trial courts what methods, within the limits of the powers conferred upon them by law, they shall put in force, in a particular case, to compel obedience to the requirements of the law on the part of a witness who announces his determination to set the law at defiance and defeat the ends of justice. The prisoner will be remanded. Judge LEWIS absent; Judge HAYDEN concurring.